IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ECI SOFTWARE SOLUTIONS, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:18-CV-0511-N |
| | § | |
| RICHARD E. SHERIDAN JR., *et al.*, | § | |
| | § | |
| Defendants. | § | |

# **MEMORANDUM OPINION AND ORDER**

This Order addresses Defendants Richard E. Sheridan, Jr., ERP SQL Pro, Inc. ("ERP"), and Timothy Roach's motions to dismiss or, alternatively, to compel arbitration [10], [13]. For the reasons stated below, the Court grants Sheridan and Roach's motions to compel arbitration and grants ERP's motion to dismiss.

## I. ORIGINS OF THE DISPUTE

Plaintiff ECI Software Solutions, Inc. ("ECI") filed suit against Defendants Sheridan, Roach, and ERP alleging improper use of ECI's confidential and proprietary information. ECI provides business management and e-commerce systems software, technology solutions, and other related services for a number of industries. ECI's product portfolio includes licenses for the use of M1 software, an enterprise resource planning tool that ECI licenses to its customers to help them manage business operations and activities. ECI alleges that it generates a significant portion of its income from providing M1 software services, such as maintenance, customization, training, etc., to its customers.

Defendant Sheridan worked for ECI for more than 12 years, from 2003 to 2016. Sheridan worked as both an employee and an independent contractor, and signed two separate agreements: a non-disclosure agreement ("NDA") and an independent contractor services agreement ("ICA). ECI provided confidential and proprietary information to Sheridan under the terms of both agreements, and ECI attached both of these documents to its Complaint. And while ECI's Complaint references terms and provisions in the NDA and ICA — including a forum-selection clause waiving objections to personal jurisdiction in Dallas, Texas — ECI does not bring breach-of-contract claims for violations of the NDA or ICA. Instead, ECI alleges that after Sheridan terminated his relationship with ECI, Sheridan formed ERP to provide software support services and has since been wrongfully accessing and using ECI's confidential and proprietary information. ECI further claims that Sheridan has been performing M1 software services for ECI's customers, without ECI's license or authorization.

With regard to Defendant Roach, ECI alleges that Roach terminated his employment relationship with ECI in March 2017 and accepted an offer of employment with ERP. ECI claims that Roach is likewise using and accessing ECI's confidential and proprietary information through his employment with ERP. Like Sheridan, Roach signed an NDA while employed at ECI; and ECI alleges that the NDA's forum-selection clause waives any objections to personal jurisdiction for suits brought in Dallas, Texas. ECI, however, does not bring a cause of action against Roach for breach of the NDA. In their motions and response

MEMORANDUM OPINION AND ORDER – PAGE 2

briefs, the parties dispute to what extent these employment agreements apply to this case, specifically the effect of the forum-selection and arbitration clauses.

## II. THE COURT HAS PERSONAL JURISDICTION OVER SHERIDAN AND ROACH BUT NOT ERP

Defendants Sheridan, Roach, and ERP filed motions to dismiss on the basis that the Court lacks personal jurisdiction. The Court denies Sheridan and Roach's motions and grants ERP's motion.

### *A. Legal Standard*

A plaintiff bears the burden of establishing a trial court's jurisdiction over each defendant. *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985). A plaintiff has the burden of establishing personal jurisdiction by making out a *prima facie* case; proof by a preponderance is not required. *Jones v. Petty-Ray Geophysical Geosource, Inc.*, 954 F.2d 1061, 1067 (5th Cir. 1992). "The district court usually resolves the jurisdictional issue without conducting a hearing." *Ham v. La Cienega Music Co.*, 4 F.3d 413, 415 (5th Cir. 1993). But when "a court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, it must accept as true the uncontroverted allegations in the complaint and resolve in favor of the plaintiff any factual conflicts posed by the affidavits." *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999). The Court, however, need not consider conclusory factual or jurisdictional allegations, even if uncontroverted. *See Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001); *Felch v. Transportes Lar-Mex SA DE CV*, 92 F.3d 320, 326 (5th Cir. 1996).

Establishing jurisdiction is a two-part process. The court first decides whether the forum state's long-arm statute confers jurisdiction; and if it does, the court then determines whether the exercise of jurisdiction is consistent with due process. *Mink v. AAAA Dev. LLC*, 190 F.3d 333, 335 (5th Cir.1999). Because the Texas long-arm statute has been interpreted to extend personal jurisdiction to the limits of due process, the Court need only determine whether jurisdiction over the defendant is constitutionally permissible. *Jones*, 954 F.2d at 1067–68; *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 214 (5th Cir. 2000). Federal constitutional due process requires a showing of two things: (1) the defendant must have purposely availed himself of the benefits and protections of the forum state by establishing "minimum contacts" with the forum state such that he should reasonably anticipate being haled into court there; and (2) that the exercise of personal jurisdiction over the defendant does not offend traditional notions of fair play and substantial justice. *Latshaw*, 167 F.3d at 211.

A defendant's "minimum contacts" with the forum may support either general or specific jurisdiction over the defendant. *Mink*, 190 F.3d at 336. "General jurisdiction exists when a defendant's contacts with the forum state are unrelated to the cause of action but are 'continuous and systematic.'" *Id.* (internal citations omitted). The Supreme Court has further clarified that for a corporation, the proper inquiry is whether the foreign corporation's affiliations with the forum state are so continuous and systematic as to render it essentially at home in the forum state. *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014); *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). For "an individual, the

paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place . . . the place of incorporation and principal place of business . . . ." *Daimler*, 571 U.S. at 137 (internal citations omitted). However, where the Court "seeks to assert specific jurisdiction over an out-of-state defendant," the defendant must have "purposefully directed his activities at residents of the forum" and the litigation must "arise out of or relate to those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (internal quotations and citations omitted).

In addition to general and specific jurisdiction, the Supreme Court has also held that explicit consent to personal jurisdiction satisfies due process. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 n.14 (1985) (explaining that "because the personal jurisdiction requirement is a waivable right . . . a litigant may give express or implied consent to the personal jurisdiction of the court" and may "stipulate in advance to submit their controversies for resolution within a particular jurisdiction") (internal quotations omitted). A defendant may therefore agree to a forum-selection clause that waives his right to contest personal jurisdiction if litigation is commenced in the specified forum. *Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 768 (5th Cir. 2016).

### B. Sheridan and Roach Consented to Personal Jurisdiction

Sheridan and Roach both consented to personal jurisdiction in Dallas, Texas by signing NDAs that contain the following permissive[1] forum-selection clause:

---

[1] The Court recognizes that there are two types of forum-selection clauses: mandatory and permissive. Here, the forum-selection clause is permissive because it does not mandate

> This Agreement shall be governed by the laws of the State of Texas, without regard to its conflict of laws provisions. I expressly consent to the personal jurisdiction of the state and federal courts located in Dallas, Texas for any lawsuit filed there against me by the Company arising from or relating to this Agreement.

Pl.'s Compl., Exs. A, D at ¶ 11.1 [1-1], [1-4]. Permissive forum-selection clauses function as "contractual waiver[s] of personal jurisdiction and venue objections if litigation is commenced in the specified forum." *Weber*, 811 F.3d at 768; *City of New Orleans v. Mun. Admin. Services, Inc.*, 376 F.3d 501, 504 (5th Cir. 2004) (a permissive forum selection clause is one where "a party's consent to jurisdiction in one forum does not necessarily waive its right to have an action heard in another" forum). Under federal law, forum-selection clauses are valid and enforceable where they have been obtained through freely negotiated agreements and are not unreasonable and unjust. *Burger King*, 471 U.S. at 473 n.14. Here, Roach and Sheridan do not argue that the forum-selection clauses are unjust or unreasonable. Instead, they argue that ECI's claims do not arise out of or relate to the NDAs. The Court disagrees.

Forum-selection clauses covering claims "relating to" an agreement are broad in scope and encompass all claims having some possible relationship with the contract. *TGI Friday's Inc. v. Great Nw. Restaurants, Inc.*, 652 F. Supp. 2d 750, 759 (N.D. Tex. 2009). Here, the forum-selection clauses in the NDAs are broad in scope and apply to any lawsuit "relating to" the NDAs. ECI alleges that Defendants are misusing ECI's confidential and proprietary

---

that litigation occur in the specified forum. Instead, the clause functions as a contractual waiver of personal jurisdiction for lawsuits filed in Dallas, Texas. *Weber*, 811 F.3d at 768.

information. Sheridan and Roach only received such confidential and proprietary information in exchange for signing the NDAs. Moreover, even though ECI does not bring a claim for breach of the NDAs, ECI's Complaint relies on multiple terms and provisions in the NDAs. The Court therefore finds that because ECI's claims fall within the scope of the forum-selection clauses, Sheridan and Roach consented to personal jurisdiction.

### C. The Court Does Not Have Personal Jurisdiction Over ERP

ECI does not make out a *prima facie* case showing that this Court has personal jurisdiction over ERP. ECI's Complaint alleges that the Court has jurisdiction over ERP because it "conducts business in the State of Texas" and "purposefully availed itself of the benefits and protections of Texas law." Compl. at ¶ 11. Such conclusory language makes it difficult to determine whether the Complaint is alleging general or specific jurisdiction over ERP. ECI, however, admits that ERP is incorporated in California and has its principal place of business in California. Compl. at ¶ 4. Moreover, ERP attached a declaration stating that it only has three employees and one office, all of which are located in California. Sheridan Decl. [10-1]. Accordingly, the Court holds that ECI's Complaint fails to make out a *prima facie* case of general jurisdiction.

ECI, in its response to ERP's motion, argues that the Court has specific (not general) jurisdiction over ERP. The Complaint itself does not identify any specific purposeful contacts or allege any facts showing that ERP directed its activities at Texas. But ECI's response brief provides slightly more information, alleging that ERP purposely reached out into Texas by soliciting and providing services to at least two of ECI's Texas-based

customers: Powder Metallurgy Company and ABC Assembly. Pl.'s Resp. at 8 [16]; Bugh Decl. at ¶¶ 14–18 [16-1]. The attached declaration, however, again contains only the conclusory statement that "Defendants have solicited and provided services" to Powder Metallurgy and ABC Assembly. *Id*. ERP, in reply, attached declarations from Nikki Patton (General Manager of Powder Metallurgy Company) and Carlos Navarro (President/CEO of ABC Assembly), in which both Ms. Patton and Mr. Navarro state that the two companies have never done business with ERP. In a motion for leave, ECI attempts to contradict Ms. Patton's declaration, attaching a second declaration of ECI employee Chris Shander, who states that his conversation notes from a May 2017 call with Ms. Patton record her saying that she was "working with Rick Sheridan." Pl.'s Mot. for Leave, Shander Decl. at ¶¶ 9–10 [24]. Even assuming Mr. Shander's note is accurate, this solitary allegation is not alone sufficient to make out a *prima facie* case of specific jurisdiction over ERP. Because ECI provides no other specific facts or information showing that ERP purposely directed its activities at Texas, the Court grants ERP's motion to dismiss for lack of personal jurisdiction.

### III. THE COURT GRANTS SHERIDAN AND ROACH'S MOTIONS TO COMPEL ARBITRATION

Defendants Sheridan and Roach filed alternative motions to compel arbitration on the basis that the signed NDAs contain enforceable arbitration clauses. The Court agrees.

#### A. *Legal Standard*

Under the FAA, arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C.

§ 2. Accordingly, where an issue is referable to arbitration, the FAA requires courts to stay proceedings pending arbitration of the disputes at issue. *Id.* § 3. Courts perform a two-step inquiry when deciding whether to compel arbitration. Specifically, courts must address (1) "whether the parties agreed to arbitrate the dispute," and (2) "whether any federal statute or policy renders the claims nonarbitrable." *JP Morgan Chase & Co. v. Conegie ex rel. Lee*, 492 F.3d 596, 598 (5th Cir. 2007) (quoting *Wash. Mut. Fin. v. Bailey*, 364 F.3d 260, 263 (5th Cir. 2004)). The first step is further divided into two parts. Courts must determine "(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *OPE Int'l LP v. Chet Morrison Contractors, Inc.*, 258 F.3d 443, 445 (5th Cir. 2001) (citations and internal quotation marks omitted). "A court may compel arbitration only if it concludes that the parties 'ma[de] . . . the agreement for arbitration.'" *Covington v. Aban Offshore Ltd.*, 650 F.3d 556, 558 (5th Cir. 2011) (alterations in original) (quoting 9 U.S.C. § 4); *see also Gen. Motors Corp. v. Pamela Equities Corp.*, 146 F.3d 242, 246 (5th Cir. 1998) ("Arbitration is the reference of a particular dispute to an impartial third person chosen by the parties to a dispute who agree, in advance, to abide by the arbitrator's award issued after a hearing at which both parties have an opportunity to be heard."). Only after making the determination that the parties agreed to arbitrate may the Court consider "whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985).

### B. *The Parties Agreed to Arbitrate this Dispute*

"Generally, principles of state contract law govern the question of whether the parties formed a valid agreement to arbitrate." *JP Morgan Chase & Co.*, 492 F.3d at 598. While there is strong federal policy favoring arbitration, it "does not apply to the determination of whether there is a valid agreement to arbitrate between the parties." *Fleetwood Enters. Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002). Instead, the presumption favoring arbitration does not come into the Court's analysis until the second step, when determining the scope of a valid arbitration agreement. *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 475–76 (1989) (noting that "due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself must be resolved in favor of arbitration"). Here, because there exists a valid agreement to arbitrate and this dispute falls within the scope of the arbitration agreement, the parties agreed to arbitrate this dispute.

*1. There Is a Valid Agreement to Arbitrate* — As stated previously, Sheridan signed an NDA during his employment with ECI in exchange for receiving ECI's confidential and proprietary information. The NDA contains the following arbitration provision:

> 10.1 <u>Arbitration</u>. Except as provided in Section 10.3 below, any dispute or controversy arising out of, relating to, or concerning any interpretation, construction, performance, or breach of this agreement, will be settled by arbitration to be held in Dallas, Texas.

Compl., Ex. A at ¶ 10.1. ECI argues that the provision is not applicable because the ICA supersedes the NDA. ECI's argument is unpersuasive. Sheridan worked for ECI as both an

employee and independent contractor. He received confidential and proprietary information under the terms of both the NDA and the ICA. In support of its argument that the ICA supersedes the NDA, ECI points to paragraph 8.1 of the ICA, which states that the "Agreement is the final, complete, and exclusive agreement of the parties with respect to the subject matter hereof and supersedes and merges all prior discussions between us." Compl., Ex. B at ¶ 8.1 [1-2]. The referenced language, however, is clearly limited to the ICA and Sheridan's position as an independent contractor ("with respect to the subject matter hereof"). It does not expressly supersede or abrogate the NDA, nor does it specifically invalidate the NDA's arbitration clause. Moreover, ECI's Complaint relies on multiple provisions of the NDA, including its confidentiality provisions and document return provisions. *See* Compl. at ¶¶ 20–22, 29. Finally, ECI does not allege that its claims against Sheridan are limited to confidential or proprietary information he received while working as an independent contractor. Accordingly, because ECI does not otherwise contest the validity of the NDA's arbitration clause, the Court finds that the agreement to arbitrate is valid. *In re McKinney*, 167 S.W.3d 833, 835 (Tex. 2005) (compelling arbitration because "[a]bsent fraud, misrepresentation, or deceit," parties are bound by the terms of a contract).

With regard to Defendant Roach, ECI does not contest the validity of the arbitration clause in the NDA, which Roach executed in exchange for receiving confidential and proprietary information from ECI. Accordingly, the Court finds that the agreement to arbitrate between Roach and ECI is also valid.

***2. This Dispute Falls Within the Scope of the Arbitration Agreement*** — The arbitration provisions in the Sheridan NDA and Roach NDA are identical and do not contain delegation clauses. The arbitration clause states that it applies to "any dispute or controversy arising out of, relating to, or concerning any interpretation, construction, performance, or breach" of the NDA. Compl., Ex. A at ¶ 10.1 [1-1]. While ECI does not bring a breach-of-contract cause of action, this dispute involves alleged wrongful use of ECI's confidential and proprietary information, which ECI provided to Sheridan and Roach under the terms of the NDAs.

Additionally, in its Complaint and responses to Defendants' motions, ECI cites to multiple provisions of the NDAs in support of its claims. For example, ECI cites to section 2 of the NDA, which defines confidential information and use and non-use of such confidential information. Compl. at ¶¶ 21, 42. ECI also cites to section 6 discussing Sheridan and Roach's obligations to return ECI's documents and information, which ECI alleges both Sheridan and Roach failed to do. *Id*. at ¶¶ 22, 43. Moreover, ECI argues that the Court has personal jurisdiction over Roach because of the forum-selection clause in the NDA. Pl.'s Resp. at 4–7 [18]. And ECI even attached the NDAs to its Complaint. ECI's claims for misappropriation would not exist absent Roach and Sheridan's employment with ECI and their execution of the NDAs. ECI's disputed claims therefore relate to and concern interpretation, performance, and application of provisions in the NDAs. Accordingly, the Court finds that the dispute between ECI and Defendants Sheridan and Roach are within the scope of the arbitration clauses in the NDAs.

ECI also argues that Sheridan and Roach's motions to compel arbitration should be denied because the NDAs expressly reserve ECI's right to seek equitable remedies in Texas state or federal court. ECI supports its argument by pointing to section 10.3 of the NDAs, which state that ECI may apply to "any court of competent jurisdiction for a temporary restraining order, preliminary injunction, or other interim or conservatory relief" as necessary. Compl., Exs. A, D at ¶ 10.3. This provision, however, does not reserve ECI's unfettered right to seek all equitable remedies; section 10.3 contemplates preliminary and interim relief and does not negate the language in the arbitration clause requiring that "any dispute or controversy" be settled by arbitration in Dallas, Texas.

### C. *No Federal Statute or Policy Renders the Claims Nonarbitrable*

The parties agreed to arbitrate, and no federal statute or policy renders the claims nonarbitrable. Neither party identifies any federal statute or policy foreclosing arbitration of ECI's claims, and the Court is not aware of one. Accordingly, the Court does not deem ECI's claims nonarbitrable.

### IV. THE COURT DISMISSES THIS CASE

Although the FAA provides for a stay pending arbitration, 9 U.S.C. §3, a court may instead dismiss the action with prejudice when all claims are subject to arbitration. *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992) ("The weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration.") (citations omitted); *see also Vican, Inc. v. Incipio Techs., Inc.*, 2016 WL 687155, at *1 (N.D. Tex. Feb. 19, 2016) (dismissing action *sua sponte*

under the FAA upon request to compel arbitration and stay litigation). This is so because "[a]ny post-arbitration remedies sought by the parties will not entail renewed consideration and adjudication of the merits of the controversy but would be circumscribed to a judicial review of the arbitrator's award in the limited manner prescribed by law." *Alford*, 975 F.2d at 1164 (citation omitted). Here, the Court is persuaded that all claims ECI has asserted are subject to arbitration. Based on this determination, the Court dismisses the case in favor of arbitration.

Signed December 11, 2018.

David C. Godbey
United States District Judge